**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**BOWLING GREEN DIVISION**

JAMIAHIA KENNEDY and WILLOW NEAL, on Behalf of Themselves Individually and All Others Similarly Situated

PLAINTIFFS

v.

CIVIL ACTION NO. 1:24-cv-16-GNS

KENTUCKY DEPARTMENT OF JUVENILE JUSTICE

SERVE:
Larry Chandler, Interim Commissioner
1025 Capital Center Drive, 3rd Floor
Frankfort, KY 40601

and

ADAIR COUNTY YOUTH DETENTION CENTER

SERVE:
Tonya Burton, Superintendent
401 Appleby Drive
Columbia, KY42728

and

KENTUCKY CABINET FOR HEALTH AND FAMILY SERVICES

SERVE:
Eric Friedlander, Secretary
275 E. Main St.
Frankfort, KY 40621

and

KERRY HARVEY, Individually and in his capacity as Secretary of the Kentucky Justice

and Public Safety Cabinet )
125 Holmes Street )
Frankfort, KY 40601 )

and )

VICKI REED, Individually and in her capacity as Commissioner of the Department of Juvenile Justice )
1025 Capital Center Drive, 3rd Floor )
Frankfort, KY 40601 )

and )

GEORGE SCOTT, Individually and in his capacity as Executive Director Office of Program Operations Services )
1025 Capital Center Drive, 3rd Floor )
Frankfort, KY 40601 )

and )

JAMES SWEATT, II, Individually and in his capacity as Executive Director, Office of Detention, Department of Juvenile Justice )
1025 Capital Center Drive, 3rd Floor )
Frankfort, KY 40601 )

and )

DAVID KAZEE, DIVISION DIRECTOR )
1025 Capital Center Drive, 3rd Floor )
Frankfort, KY 40601 )

and )

TONYA BURTON, Individually and in her capacity as Superintendent of Adair County Youth Detention Center )
401 Appleby Drive )
Columbia, KY 42728 )

and )

CHRISTOPHER RAKES, Individually and in his capacity as Juvenile Facility Superintendent )

of Adair County Youth Detention Center )
401 Appleby Drive )
Columbia, KY42728 )
)
DEFENDATS )

---

**COMPLAINT**

---

## INTRODUCTION

1. Plaintiffs file this action in their individual capacities and on behalf of all children held in isolation in the Adair County Youth Detention Center ("Detention Center") where they were subjected to abuse and neglect on a scale so unconscionable it led to intervention by the General Assembly.

2. Defendants' conduct violates clearly established, longstanding, national (and international) standards for detaining and incarcerating adults, much less children.

3. Defendants' treatment of Plaintiffs and other class members is intolerable in a civilized society. In fact, the children were subjected to conditions that violate the Geneva Convention and the Uniform Code of Military Justice.

4. Defendants engaged in the conduct described below under color of the law of the Commonwealth of Kentucky and Adair County.

5. The offenses described below resulted from Defendants' failure to employ qualified persons for positions of authority, to properly or conscientiously train and supervise the conduct of such persons after their employment, and to promulgate appropriate operating policies and procedures either formally or by custom to protect the constitutional rights of Kentucky children.

6. Defendants' conduct was intentional or grossly negligent, or indicated active malice toward Plaintiffs and the class, or constitutes a total and reckless disregard for and indifference to

Plaintiffs' constitutional rights, justifying an award of punitive damages in addition to the actual damages which Plaintiffs and the class are entitled to recover.

7. Such treatment has been regularly perpetrated by Defendants and there are potentially hundreds of members of this class.

8. There are questions of law and fact in this case that are common to all members of the class.

9. Plaintiffs' claims are typical of those of the class, and they will fairly and adequately protect the interests of this class.

**JURISDICTION AND VENUE**

10. Plaintiffs, and all other similarly situated, seek declaratory and injunctive relief, and actual and punitive damages from Defendants under the Civil Rights Act of 1871, 42 U.S.C. §1983, for gross and unconscionable violations of the rights, privileges, and immunities guaranteed them by the Fourth, Eighth, and Fourteenth Amendments to the Constitution of the United States.

11. This Court has jurisdiction over these claims pursuant to the provisions of 28 U.S.C. §1331 and §1343.

12. Jurisdiction over Plaintiffs' state law claims is conferred upon this Court by 28 U.S.C. §1367, which provides supplemental jurisdiction over state law claims so related to federal law claims that one case or controversy exists for Article III purposes.

13. The constitutional deprivations alleged below were committed in Adair County, Kentucky which is within the jurisdiction of the United States District Court for the Western District of Kentucky, Bowling Green Division. Venue in this District is proper pursuant to 28 U.S.C. §1391.

## CLASS ACTION

14. Plaintiffs bring this action as a class action pursuant to Rules 23(b)(1), (2) and (3) of the Federal Rules of Civil Procedure.

15. The class consists of all individuals who were and are held in isolation in the Detention Center where they were subjected to abuse and neglect, including being held in isolation, deprived of educational instruction, denied basic hygiene and showers, and denied prescribed medications as more fully set forth below.

16. This class also consists of girls who were denied feminine hygiene products while menstruating and whose bodies were exposed to male view while being held under these conditions.

17. Plaintiffs and other members of the class were subjected to such treatment despite the absence of any legitimate penological interest or probable cause.

18. Plaintiffs will fairly and adequately protect the interests of all class members. They are members of the class and their claims are typical of the claims of all class members.

19. Plaintiffs were harmed and de-humanized by the treatment accorded them and will aggressively pursue the interests of the entire class.

20. Plaintiffs' interest in obtaining injunctive relief and actual and punitive damages for the violations of their constitutional rights and privileges are consistent with and not antagonistic of those of any other person within the class.

21. Given the circumstances of their detention, as detailed below, Plaintiffs allege that Defendants regularly hold children in isolation, deprive them of educational instruction, deprive them of basic hygiene and showers, and withhold prescribed medications.

22. Given the circumstances of their detention, as detailed below, Plaintiffs allege that

Defendants regularly exposed girls' naked bodies to members of the opposite sex, either through conducting the forcible removal of clothing or the withholding clothing while in view of employees and other detainees.

23. Such abuses violate the Fourth, Eighth, and Fourteenth Amendments to the Constitution of the United States, 42 U.S.C. §1983, and clearly established law.

24. Plaintiffs and the members of the class are entitled to declaratory and injunctive relief and an award of compensatory and punitive damages.

25. A class action is superior to other available methods for the fair and efficient adjudication of this controversy because:

a) A multiplicity of suits with consequent burden on the courts and Defendants should be avoided.

b) It would be virtually impossible for all class members to intervene as parties-plaintiffs in this action.

c) Upon adjudication of Defendants' liability, claims of the class members can be determined by this Court.

**PARTIES**

26. Plaintiff Jamiahia Kennedy ("Kennedy") is a resident of the Commonwealth of Kentucky and was held in the Adair County Youth Detention Center in 2022.

27. Plaintiff Willow Neal ("Neal") is a resident of the Commonwealth of Kentucky and was held in the Adair County Youth Detention Center in 2022.

28. Defendant Kentucky Department of Juvenile Justice is responsible for the conditions of confinement in youth detention facilities, for the establishment of policies either formally or by custom and practice, and for the employment, training, supervision and conduct of the officers

and employees of Kentucky's youth detention facilities. The Department of Juvenile Justice is made a Defendant to this action for the purpose of declaratory and injunctive relief only.

29. Defendant Adair County Youth Detention Center ("Detention Center") is charged with the care, custody, and supervision of incarcerated youth. The Detention Center is made a Defendant to this action for the purpose of declaratory and injunctive relief only.

30. Defendant Cabinet for Health and Family Services ("CHFS") is charged with the care, custody, and supervision of children in Kentucky's foster-care system.

31. Defendant Kerry Harvey ("Harvey") is the Secretary of the Kentucky Justice and Public Safety Cabinet and is responsible for the conditions of confinement in youth detention facilities, for the establishment of policies either formally or by custom and practice, and for the employment, training, supervision and conduct of the officers and employees of Kentucky's youth detention facilities. Harvey is named in his individual and official capacities.

32. Defendant Vicki Reed ("Reed") was Commissioner of the Department of Juvenile Justice and was responsible for the conditions of confinement in youth detention facilities, for the establishment of policies either formally or by custom and practice, and for the employment, training, supervision and conduct of the officers and employees of Kentucky's youth detention facilities. Reed is named in her individual and official capacities.

33. Defendant George Scott ("Scott") is Executive Director of Office of Program Operations Services in the Department of Juvenile Justice and is responsible for the conditions of confinement in youth detention facilities, for the establishment of policies either formally or by custom and practice, and for the employment, training, supervision and conduct of the officers and employees of Kentucky's youth detention facilities. Scott is named in his individual and official capacities.

34. Defendant David Kazee ("Kazee) is Division Director, Office of Detention in the Department of Juvenile Justice and is responsible for the conditions of confinement in youth detention facilities, for the establishment of policies either formally or by custom and practice, and for the employment, training, supervision and conduct of the officers and employees of Kentucky's youth detention facilities. Kazee is named in his individual and official capacities.

35. Defendant James Sweatt, II ("Sweatt") is Executive Director, Office of Detention in the Department of Juvenile Justice and is responsible for the conditions of confinement in youth detention facilities, for the establishment of policies either formally or by custom and practice, and for the employment, training, supervision and conduct of the officers and employees of Kentucky's youth detention facilities. Sweatt is named in his individual and official capacities.

36. Tonya Burton ("Burton") is the Superintendent of the Adair County Youth Detention Center and is responsible for the care, custody, and supervision of youth at the Detention center, the conditions of confinement in the Detention Center, for the establishment of policies either formally or by custom and practice, and for the employment, training, supervision and conduct of its officers and employees. Burton is named in her individual and official capacities.

37. Christopher Rakes ("Rakes") is the Juvenile Facility Superintendent of the Adair County Youth Detention Center and is responsible for the care, custody, and supervision of youth at the Detention Center, the conditions of confinement in the Detention Center, for the establishment of policies either formally or by custom and practice, and for the employment, training, supervision and conduct of its officers and employees. Rakes is named in his individual and official capacities.

## FACTUAL ALLEGATIONS
*Adair County Youth Detention Center*

38. The Adair County Youth Detention Center ("Detention Center") is one of eight juvenile detention centers operated by the Department of Juvenile Justice.

39. Upon information and belief, the Detention Center houses pre- and post-conviction youthful offenders, as well as non-offenders in the custody of the Cabinet for Health and Family Services.

40. The Detention Center is, and has been, chronically understaffed, frequently operating with only 5 employees while housing approximately 40 children.

41. Defendants regularly held children in lockdown for days or weeks at a time.

42. While locked down, children in the Detention Center would eat, sleep, and defecate in their cells.

43. Staff at the Detention Center would withhold prescribed medications from children as a form of punishment.

44. Staff at the Detention Center restricted children's access to showers and other basic hygiene needs.

45. Children in the Detention Center were not provided any educational instruction.

46. Staff at the Detention Center frequently used excessive and unnecessary force or restraint holds.

47. Defendant Burton and other staff regularly falsified incident reports in an effort to conceal the suffering inflicted on children at the Detention Center.

48. Defendant Burton and other staff restricted children's access to medical providers.

49. Defendant Burton lied to medical staff about the conditions of children in the facility.

50. Upon information and belief, plumbing in the Detention Center was not maintained or

intentionally cut off.

51. Upon information and belief, male staff regularly conducted cell checks on girls detained without clothing.

52. Medical providers reported the abuse and neglect occurring at the Detention Center to officials with the Department of Juvenile Justice, including Defendants Reed, Scott, Sweatt, and Kazee.

53. On at least one occasion in the summer of 2022, Defendant Reed visited the Detention Center.

54. During her visit, medical staff asked Defendant Reed to observe the conditions of the isolation cells in the Detention Center.

55. Defendant Reed did not visit the isolation cells because she was too busy.

***Plaintiff Jamiahia Kennedy***

56. Plaintiff Jamiahia Kennedy was confined to the Adair County Youth Detention Center from August to December 2022.

57. During her four months in the Detention Center, Kennedy was kept in an isolation cell.

58. During her four months at the Detention Center, Kennedy was provided access to a shower approximately fifteen times.

59. Kennedy resorted to using her bra to wash her body.

60. On one occasion Kennedy was allowed to shower, she was accompanied by two male police officers.

61. Following a suicide attempt, Kennedy was moved to a padded cell, where male employees cut off her clothing.

62. Kennedy was held in the padded cell for approximately 2 months.

63. The padded cell did not have a working toilet, nor did it have a bed.

64. Because the toilet did not work, urine and excrement overflowed into the cell.

65. Although initially provided with a suicide smock, Defendant Burton later removed the smock and did not provide Kennedy with any clothing or shower access for approximately twelve days.

66. On several occasions, Kennedy asked Defendant Tonya Burton for feminine hygiene products, and Burton refused.

67. While at the Detention Center, Kennedy did not receive any educational instruction.

68. Although Kennedy has been diagnosed with serious mental health conditions, while at the Detention Center, Kennedy did not receive any mental health treatment.

69. In November 2022, Detention Center staff withheld prescribed medications from Kennedy and other detainees as collective punishment.

***Plaintiff Willow Neal***

70. Plaintiff Willow Neal was confined to the Detention Center from November 10 to December 15, 2022.

71. At the time of her detention, she was 17 years old and seven months pregnant.

72. Medical providers advised Defendant Burton and other staff that Neal should not be locked down in an isolation cell.

73. Neal was held in an isolation cell throughout her time at the Detention Center.

74. Neal's cell was infested with insects.

75. Neal made several requests for cleaning supplies to clean her cell, all of which were denied.

76. Over the course of her detention, Neal received approximately twelve showers.

77. Over the course of her detention, Neal was let out of her cell to take a walk approximately five times.

78. Instead of educational instruction, Neal received workbooks to complete on her own.

79. Neal did not receive any school credit for completing the workbooks.

80. Neal has also been diagnosed with serious mental health conditions.

81. While Neal was in the Detention Center, she did not receive any mental health care, nor did she receive any prescribed medications.

***Other Members of the Putative Class***

82. In the summer of 2022, medical staff reported increasing alarm over the treatment of a girl whose mental and physical health rapidly deteriorated while in an isolation cell without running water and frequently without lighting.

83. Another child was held in an isolation cell with the door's window covered and a Spanish version of "Baby Shark" playing on a loop.

84. Another child received a punishment of 24-hours' isolation but was arbitrarily held in isolation for several days.

85. Kennedy and Neal both observed a girl who spent days soaked in menstrual blood while Detention Center staff told her she was "nasty" and "smelled like fish."

## LEGAL CLAIMS

### COUNT I
**Constitutional Deprivations**
***42 U.S.C. §1983***

86. Defendants were acting under the color of state law when they detained children at the Adair County Youth Detention Center.

87. Defendants deprived Plaintiffs of their rights under the Fourth, Eighth, and Fourteenth

Amendments to the United States Constitution.

88. The abuses to which Plaintiffs and the class were subjected, as described above, was the result of Defendants' failure to adequately train and supervise employees, and failure to promulgate or enforce appropriate policies to maintain the safety of children in their custody.

89. Defendants are final policymakers and decisionmakers for the Detention Center and had oversight responsibility for ensuring that:

    a) Children are not exposed to a serious and excessive risk to their health or safety;

    b) the staff are trained to prevent, detect, and respond to abuse;

    c) children can safely report abuse;

    d) officers, employees, and contractors are adequately trained and supervised;

    e) the facility is adequately and properly staffed with resources necessary to protect children from abuse;

    f) children are provided with educational opportunities;

    g) children are provided with necessary medical and mental healthcare;

    h) children are provided safe and sanitary living quarters;

    i) children are provided regular access to showers and basic personal hygiene needs;

    j) children are provided with daily access to recreational activity;

    k) children are free from cruel and unusual punishment and excessive force.

90. Defendants failed to hire, promulgate, review, and train staff on procedures necessary to prevent, detect, and respond to abuse and ensure that children are not exposed to a serious and excessive risk to their health or safety.

91. Defendants' deliberate indifference to the rights of Adair County Youth Detention Facility's vulnerable residents, failure to appropriately supervise residents and staff, failure to

adequately train staff, failure to promulgate and enforce appropriate policies, and adherence to unconstitutional policies, customs, practices, and procedures directly led to the violation of Plaintiffs' constitutional rights.

92. Defendants were on actual or constructive notice that the lack of training and inadequate staffing and supervision were likely to result in the violation of the constitutional rights of children housed in the Adair County Youth Detention Facility.

93. As a result of the foregoing failures, and the other institutional failures identified in this Complaint, the inadequacy of Defendants' policies, customs, practices, and procedures were so likely to result in the violation of constitutional rights that Defendants can reasonably be said to have been deliberately indifferent to a serious and excessive risk to the health and safety of Plaintiffs.

94. As a direct and proximate result of the aforementioned conduct, Plaintiffs and others similarly situated suffered physical harm, emotional distress, and mental anguish.

**COUNT II**
**Negligence**

95. Pursuant to KRS 605.100, Defendants had a ministerial duty to provide children in the Detention Center a program designed and operated in such a manner as to rehabilitate, train, develop, and educate the children.

96. Pursuant to KRS 15A.065, Defendants had a ministerial duty to provide children in the Detention Center with mental health services and access to an ombudsman to whom they may report concerns.

97. Pursuant to KRS 15A.067, Defendants had a ministerial duty to provide children in the Detention Center with an appropriate education and, upon their release, forward educational records to the district in which the student resides.

98. Defendants breached the above duties to children detained in the Adair County Youth Detention Center.

99. As a result of Defendants' breach, Plaintiffs and the class suffered physical harm, emotional distress, and mental anguish.

**WHEREFORE,** Plaintiffs and the class they represent request:

A. That this action proceed as a class action under Fed. R. Civ. P. 23(b)(1-3);

B. A trial by jury;

C. An award of actual and punitive damages to Plaintiffs and all members of the class;

D. A declaratory judgment deeming unconstitutional the conditions of confinement for youth at the Adair County Youth Detention Center, and permanently enjoining Defendants from operating the Detention Center in an unconstitutional manner; and

E. An award of attorney fees, costs and expenses incurred in this action, and interest on all sums awarded at the maximum rate permitted by law, including but not limited to 42 U.S.C. §1988 and KRS 412.070; and

Respectfully submitted,

/s/ *Laura E. Landenwich*
LAURA E. LANDENWICH, #92109
ADAMS LANDENWICH LAY, PLLC
517 West Ormsby Avenue
Louisville, KY 40203
laura@justiceky.com
(502) 561-0085

and

JOHN FRIEND

        ERIN STEMLE
        ALEX R. WHITE, PLLC
        904 Minoma Avenue
        Louisville, KY  40217
        johnny@friendlawky.com
        erin@arwhitelaw.com
        (502) 882-7552
        *Counsel for Plaintiffs*