UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:24-CV-00016-GNS

JAMIAHIA KENNEDY et al.                                                                             PLAINTIFFS

v.

KENTUCKY DEPARTMENT
OF JUVENILE JUSTICE et al.                                                     DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendants' Motion to Strike (DN 27), Defendants' Motions to Dismiss (DN 22, 23, 28, 29, 31), and Plaintiffs' Motion for Leave (DN 34). The motions are ripe for adjudication.

### I.     BACKGROUND

Plaintiffs Jamiahia Kennedy ("Kennedy"), Willow Neal ("Neal"), Chanchiz Brown ("Brown"), D.B. (a minor child), and C.C. (a minor child) (collectively, "Plaintiffs") brought this action "to address constitutional and statutory deficiencies within Kentucky's juvenile facilities." (Corrected 1st Am. Compl. 1, DN 34-1 [hereinafter 1st Am. Compl]).[1] Plaintiffs name the following entities as defendants: Kentucky Department of Juvenile Justice ("DJJ"), Adair County Youth Detention Center ("Adair Center"), Campbell Regional Juvenile Detention Center

---

[1] Plaintiffs move for leave to substitute their First Amended Complaint (DN 24) with a version that includes "three Defendants who were named in paragraphs 45, 46, and 48 [but] were inadvertently omitted from the case caption." (Pls.' Mot. Leave 1, DN 34). These three defendants are Marshay Boyd ("Boyd"), Elzie Burgher ("Burgher"), and Dena Burton ("D. Burton"). (1st Am. Compl. ¶¶ 45-46, 48). In the Corrected First Amended Complaint (DN 34-1), Plaintiffs included these three names in the case caption but have otherwise made no additional changes. Defendants state they have no objection with this amendment and agree to accept service for the newly added defendants. (Defs.' Reply Mot. Strike 2 n.1, DN 45). Therefore, Plaintiffs' motion is granted, and the Corrected First Amended Complaint (DN 34-1) is the operative pleading. For simplicity, all references to the First Amended Complaint are to the corrected version.

("Campbell Center"), Fayette Regional Juvenile Detention Center ("Fayette Center"), Kentucky Cabinet for Health and Family Services ("CHFS"), and Kentucky Justice and Public Safety Cabinet ("JPSC").  (1st Am. Compl. ¶¶ 37-40).  Plaintiffs also bring claims against the following Defendants in their individual and official capacities:  Kerry Harvey ("Harvey"), Keith Jackson ("Jackson"), Vicki Reed ("Reed"), Randy White ("White"), Boyd, Burgher, George Scott ("Scott"), D. Burton, James Sweatt, II ("Sweatt"), David Kazee ("Kazee"), Tonya Burton ("T. Burton"), Christopher Rakes ("Rakes"), Tom Milburn ("Milburn"), and Joe Caskey ("Caskey") (collectively, "Individual Defendants").  (1st Am. Compl. ¶¶ 41-54).  Each of these individuals allegedly possessed a supervisory role in one of the government agencies or youth detention centers during the events comprising Plaintiffs' causes of action.  (*See* 1st Am. Compl. ¶¶ 41-54).

Plaintiffs are individuals who allegedly either currently or have previously been placed in DJJ's custody by residing at a Kentucky youth detention center.  (1st Am. Compl. ¶¶ 32-36).  Kennedy resided in the Adair Center from August 2022 to December 2022 and in the Campbell Center from December 2022 to October 2023.  (1st Am. Compl. ¶ 32).  Neal resided in the Adair Center from November to December 2022.  (1st Am. Compl. ¶ 159).  Brown resided in the Fayette Center from September 2021 to September 2022 and in the Adair Center from September 2022 to December 2023.  (1st Am. Compl. ¶¶ 172-77).  D.B. resided in the Adair Center "from approximately November 2022 to July 2023" and is currently "on probation and subject to re-institutionalization by the DJJ."  (1st Am. Compl. ¶¶ 35, 199).  C.C. resided in the Adair Center from December 2023 to March 2024, and is currently in the custody of DJJ.  (1st Am. Compl. ¶ 36).  Additionally, Plaintiffs seek to assert a class action, representing "all individuals incarcerated by DJJ" who experienced the same types of harms alleged by Plaintiffs.  (1st Am. Compl. ¶¶ 21-22).

Plaintiffs claim that they were subjected to "gross and unconscionable violations of the rights, privileges, and immunities guaranteed them by the Fourth, Eighth, and Fourteenth Amendments to the Constitution of the United States" while they were in custody at the detention centers. (1st Am. Compl. ¶ 17). These alleged violations include prolonged solitary confinement; exposure to unsanitary conditions; lack of access to education; withholding of medications; use of pepper spray; involuntary strip searches in front of members of the opposite sex; and lack of access to healthcare, including dental and mental health services. (1st Am. Compl. ¶¶ 134, 141-55, 162-69, 174-86, 192-98, 202-10). Additionally, Plaintiffs contend that they are all "persons with a disability that substantially limits one or more of their major life activities." (1st Am. Compl. ¶ 239).[2] Plaintiffs assert the following causes of action against all Defendants: constitutional deprivations under 42 U.S.C. § 1983 ("Section 1983") (Count I); negligence (Count II); and disability discrimination under 42 U.S.C. § 12132 (i.e., the Americans with Disabilities Act ("ADA")) (Count III). Additionally, Plaintiffs bring claims against DJJ, JPSC, and CHFS for violating 29 U.S.C. § 784 (i.e., the Rehabilitation Act) (Count IV). Plaintiffs seek both declaratory and injunctive relief, as well as monetary damages. (1st Am. Compl. ¶ 17).

Individual Defendants moved to dismiss the official and individual capacity claims contained in the initial Complaint (DN 1). (Defs.' Partial Mot. Dismiss, DN 22; Defs.' Partial Mot. Dismiss, DN 23). Following the filing of the First Amended Complaint, Defendants moved to strike the addition of new parties and move to dismiss all claims. (Defs.' Mot. Strike, DN 27; Defs.' Renewed Partial Mot. Dismiss, DN 28 [hereinafter Defs.' 3d Mot. Dismiss]; Defs.'

---

[2] Although Plaintiffs assert this contention, they only refer to "serious mental health conditions, including PTSD" on behalf of Kennedy and Neal. (1st Am. Compl. ¶¶ 132, 158). No specific disabilities are delineated for Brown, D.B., or C.C.

Renewed Partial Mot. Dismiss, DN 29 [hereinafter Defs.' 4th Mot. Dismiss]; Def.'s Mot. Dismiss, DN 31 [hereinafter Defs.' 5th Mot. Dismiss]).

## II.     JURISDICTION

The Court has subject-matter jurisdiction under federal question jurisdiction.  28 U.S.C. § 1331.  Supplemental jurisdiction is exercised over the state law claims.  *See* 28 U.S.C. § 1367(a).

## III.     DISCUSSION

### A.     Defendants' Motion to Strike (DN 27)

Harvey, Reed, Scott, Sweatt, Kazee, T. Burton, and Rakes move to strike Plaintiffs' addition of new parties from the Amended Complaint.  (Defs.' Mot. Strike 1, DN 27).  Plaintiffs filed their First Amended Complaint as a matter of course, as allowed under Fed. R. Civ. P. 15(a), having amended their complaint within "21 days after the service of a motion under Rule 12(b) . . . ."  Fed. R. Civ. P. 15(a)(B).  In their First Amended Complaint, Plaintiffs added Brown, D.B., and C.C. as plaintiffs and Jackson, White, Milburn, Boyd, Burgher, and D. Burton as defendants.[3]

The Sixth Circuit recognizes the addition of new parties as an amendment to a complaint. *See Cox v. Treadway*, 75 F.3d 230, 240 (6th Cir. 1996).  The movants contend that a Rule 15(a) amendment as a matter of course is the improper avenue for adding new plaintiffs, as "the addition of new parties is controlled by [Fed. R. Civ. P.] 21, which requires that a party receive permission of the Court before adding or dropping parties.  (Defs.' Mot. Strike 2 (citing *Keller v. Univ. of Mich.*, 411 F. Supp. 1055, 1057 (E.D. Mich. 1974))).  Additionally, the movants point out that the

---

[3] Although Defendants only seek to strike the addition of these nine named parties, Plaintiffs added more Defendants when amending the Complaint.  Specifically, Defendants Campbell Center, Fayette Center, JPSC, and Caskey were not parties to this action until Plaintiffs amended their complaint.  Because these parties are not mentioned in Defendants' motion, they will remain parties in this action.

addition of D.B. and C.C. provides additional problems because they "are minors that, under Kentucky law, . . . are unable to initiate a suit in their own name." (Defs.' Mot. Strike 2 n.1). The movants contend that the Court should strike all nine added parties from the First Amended Complaint. (Defs.' Mot. Strike 2). Under Fed. R. Civ. P. 12(f), "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). A motion to strike is an "appropriate method to challenge the addition of improper parties in an amended complaint." (Defs.' Mot. Strike 1 (citing *Light v. Guidant Corp.*, No. 3:07-cv-35-H, 2007 WL 2325940, at *2 (W.D. Ky. Aug. 13, 2007))); *see also Brainard v. Am. Skandia Life Assur. Corp.*, 432 F.3d 655, 666 (6th Cir. 2005) (finding that the trial court did not abuse its discretion when it denied plaintiff's request to add an additional party in the amended complaint).

While the movants argue that parties cannot be added to a complaint without permission from the Court under Rule 21, Plaintiffs contend they may add parties as a matter of course under Rule 15. (*See* Pls.' Resp. Defs.' Mot. Strike 1, DN 35). Plaintiffs cite *Broyles v. Correctional Medical Services, Inc.* No. 08-1638, 2009 WL 3154241 (6th Cir. Jan. 23, 2009), in which the Sixth Circuit determined that a district court abused its discretion in striking an amended complaint for failing to seek leave from court before adding new defendant parties. *Id.* at *3. In *Broyles*, the Sixth Circuit acknowledged that "[t]his Circuit has not determined whether Rule 21 or Rule 15 controls the amendment of a pleading where the amendment seeks to add parties to the action." *Id.*[4] Noting that "Rule 15 plainly embodies a liberal amendment policy," the Sixth Circuit

---

[4] The court in *Broyles* noted a circuit split on the issue of adding parties in an amended complaint as a matter of course. It compared the Seventh Circuit's opinion in *Moore v. Indiana*, 999 F.2d 1125, 1128 (7th Cir. 1993), which required a plaintiff to seek leave from the court to "assert claims against additional defendants" with the Fifth Circuit's opinion in *Summit Office Park, Inc. v. U.S. Steel Corp.*, 639 F.2d 1278, 1283 n.11 (5th Cir. 1981). In *Summit Office Park*, the Fifth Circuit

ultimately concluded that defendants are permitted to be added as additional parties in an amended complaint as a matter of course. *Id.* (quoting *Morse v. McWhorter*, 290 F.3d 795, 800 (6th Cir. 2002)). This Court has adopted the Sixth Circuit's guidance in *Broyles* and subsequently permitted plaintiffs to add defendants by an amended complaint under Rule 15(a) (i.e., without seeking leave under Rule 21). *See Brewer v. Air Prods. & Chems., Inc.*, No. 5:23-CV-123-BJB, 2023 WL 8111606, at *2 (W.D. Ky. Nov. 22, 2023). As mentioned previously, Defendants have already consented to receiving service for the additional defendants named in the First Amended Complaint. (Defs.' Reply Mot. Strike 2 n.1). Because Plaintiffs were not required to seek leave from the Court to add additional defendants when amending their Complaint as a matter of course under Rule 15(a), the movants' motion is denied as the addition of Jackson, White, Milburn, Boyd, Burgher, and D. Burton as defendants.

Plaintiffs' argument regarding the addition of new plaintiffs as a matter of course, however, is not well-founded. Plaintiffs argue that there exists an "overwhelming consensus that a plaintiff can add a party under Rule 15 during the 'matter of right' period", citing several cases in which courts have allowed the addition of *defendants* in an amended complaint without a court's leave. (Pls.' Resp. Defs.' Mot. Strike 2); *see, e.g.*, *Beach v. Equifax Inc.*, No. CV 23-147-DLB-CJS, 2024 WL 487778, at *1 (E.D. Ky. Jan. 2, 2024); *Brewer*, 2023 WL 8111606, at *3-4. Plaintiffs cite only one Tenth Circuit case where the court permitted the addition of plaintiffs under Rule 15(a). *See U.S. ex rel. Precision Co. v. Koch Indus., Inc.*, 31 F.3d 1015, 1019 (10th Cir. 1994). Plaintiffs have failed to provide any Sixth Circuit authority permitting the addition of new plaintiffs under

---

stated that "a plaintiff could amend his complaint to add defendants under Rule 15(a) without seeking leave of court under Rule 21 . . . ." *Id.* (citing *McLellan v. Miss. Power & Light Co.*, 526 F.2d 870 (5th Cir. 1976)).

Fed. R. Civ. P. 15(a), and at this time the Court will not allow the addition of plaintiffs as a matter of course.

Further, the moving Defendants correctly state that the addition of D.B. and C.C. is improper, as "they are minors who lack capacity to bring an action in their own names under [Rule] 17(c)." (Defs.' Reply Mot. Strike 2). Under Rule 17(c), a minor or incompetent person may bring a suit "[w]ith a [r]epresentative[,] [which includes] (A) a general guardian; (B) a committee; (C) a conservator; or (D) a like fiduciary." Fed. R. Civ. P. 17(a)(1). Rule 17 provides that "[a] minor . . . who does not have a duly appointed representative may sue by a next friend or by a guardian ad litem." Fed. R. Civ. P. 17(c)(2).

Plaintiffs have neither identified a next friend nor requested appointment of a guardian ad litem for D.B. and C.C. Therefore, the motion to strike is granted with respect to the addition of Brown, D.B. and C.C. as plaintiffs. These individuals will be stricken from the First Amended Complaint.

### B. Defendants' Motions to Dismiss

Defendants seek dismissal of the claims asserted against them on numerous grounds. A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint is subject to dismissal if it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P 12(b)(6). To survive a motion to dismiss under Rule 12(b)(6), the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Traverse Bay Area Intermediate Sch. Dist. v. Mich. Dep't of Educ.*, 615 F.3d 622, 627 (6th Cir. 2010) (internal quotation marks omitted) (citations omitted). "A complaint will be dismissed pursuant to Rule 12(b)(6) if no law supports the claim made, if the facts alleged are insufficient to state a claim, or if the face of the complaint presents an insurmountable bar to relief."

*Southfield Educ. Ass'n v. Southfield Bd. of Educ.*, 570 F. App'x 485, 487 (6th Cir. 2014) (citing *Twombly*, 550 U.S. at 561-64).

When considering a motion to dismiss, courts must presume all factual allegations in the complaint to be true and make all reasonable inferences in favor of the non-moving party. *Total Benefits Plan. Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) (citation omitted). Notwithstanding this presumption, "the district court need not accept a bare assertion of legal conclusions." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (internal quotation marks omitted) (citation omitted). A claim becomes plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

### 1. *Defendants' Partial Motions to Dismiss* (DN 22, 23)

The moving Defendants previously moved to dismiss the official and individual capacity claims contained in the initial Complaint. (Defs.' Partial Mot. Dismiss, DN 22; Defs.' Partial Mot. Dismiss, DN 23). These first two motions to dismiss are now moot because Plaintiffs have filed their First Amended Complaint, and the moving Defendants have renewed their motions to dismiss accordingly. *See Drake v. City of Detroit*, 266 F. App'x 444, 448 (6th Cir. 2008) ("[A]n amended complaint supercedes all prior complaints." (citation omitted)). Therefore, the motions seeking dismissal of the claims in the original Complaint are denied as moot.

### 2. *Defendants' Partial Motion to Dismiss* (DN 28)

DJJ, JPSC, Harvey, Jackson, Reed, White, Scott, Kazee, Sweatt, T. Burton, Rakes, Milburn, and Caskey move to dismiss Plaintiffs' official capacity claims asserted against them and seek dismissal of the claims for declaratory and injunctive relief. (Defs.' 3d Mot. Dismiss 1).

Defendants present three main arguments: (1) any claims for monetary damages are barred by sovereign immunity; (2) Plaintiffs lack standing to request declaratory and injunctive relief, because Kennedy and Neal were not residents within a DJJ facility when they brought this action; and (3) the action is moot, as there is no longer "a live controversy under Article III." (Defs.' 3d Mot. Dismiss 3-4, 7).

Regarding sovereign immunity, Defendants correctly point out that "absent waiver by the State or valid congressional override, the Eleventh Amendment bars a damages action against a State in federal court." *Kentucky v. Graham*, 473 U.S. 159, 169 (1985) (citation omitted). The Supreme Court has made it clear that this prohibition extends to state employees acting in their official capacities. *Id.* at 166 ("As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." (citation omitted)). Thus, Plaintiffs cannot seek monetary damages from DJJ nor JPSC, as these are entities of the state. *See Peavey v. Univ. of Louisville*, 834 F. Supp. 2d 620, 625 (W.D. Ky. 2011) ("The Eleventh Amendment to the Constitution generally bars suits brought in federal court against a state and its agencies." (citing *Grinter v. Knight*, 532 F.3d 567, 572 (6th Cir. 2008))). Furthermore, to the extent that the individual state employees are sued in their official capacities, this "is *not* a suit against the official personally, for the real party in interest is the entity." *Graham*, 473 U.S. at 166. Therefore, claims seeking monetary damages against all Individual Defendants in their official capacities are dismissed.

Plaintiffs also lack standing to sue Individual Defendants in their official capacities for declaratory or injunctive relief. For a cause of action to be a judiciable case or controversy under Article III of the U.S. Constitution, a plaintiff must have standing to sue. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559-60 (1992). Standing requires three elements: (1) an injury in fact, (2)

9

a "causal connection between the injury and the conduct complained of[,]" and (3) a likelihood "that the injury will be 'redressed by a favorable decision.'" *Id.* at 560-61 (citations omitted). Plaintiffs, as "[t]he part[ies] invoking federal jurisdiction[,] bear[] the burden of establishing these elements." *Id.* at 561. To seek declaratory and injunctive relief, Plaintiffs must show that they are under a threat that is "actual and imminent, not conjectural or hypothetical . . . ." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009). Plaintiffs may not rely merely on "past exposure to illegal conduct" to establish standing. *Sumpter v. Wayne Cnty.*, 868 F.3d 473, 491 (6th Cir. 2017).

Neither Kennedy nor Neal allege being held in custody at a DJJ facility when this action was brought. (*See* 1st Am. Compl. ¶¶ 32-33). No declaratory or injunctive relief can, therefore, redress their alleged injuries, as their injuries are not "actual and imminent." *Summers*, 555 U.S. at 493. Plaintiffs do not deny this fact; instead, they state that Individual Defendants' argument "does not account for [the fact that] . . . C.C. is incarcerated [and] D.B. is on probation." (Pls.' Resp. Defs.' 3d, 4th, & 5th Mots. Dismiss 21, DN 38). As stated previously, D.B. and C.C. have been stricken from this action as they are minors who are not appropriately represented. Kennedy and Neal accordingly lack standing to bring this suit against Individual Defendants in their official capacities, and they have failed to state injunctive or declaratory claims for which relief can be granted. Fed. R. Civ. P. 12(b)(6). The official capacity claims against the moving Individual Defendants, are dismissed.

### 3. *Defendants' Partial Motion to Dismiss* (DN 29)

Harvey, Reed, Scott, Sweatt, Kazee, Burton, and Rakes also move to dismiss Plaintiffs' individual capacity claims in the First Amended Complaint. (Defs.' 4th Mot. Dismiss 1, DN 29). In response, Plaintiffs explicitly concede and do not contest Defendants' motion regarding the "ADA and Rehabilitation Act claims against public employees in their individual capacities."

10

(Pls.' Resp. Defs.' 3d, 4th, & 5th Mots. Dismiss 9).  Defendants' motion is granted regarding these claims.

### a. Section 1983 Claims

Plaintiffs allege that "Defendants were acting under the color of state law when they detained children . . . [and] deprived Plaintiffs of their rights under the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution."  (1st Am. Compl. ¶¶ 218-19). Plaintiffs further claim that alleged abuses were "the result of Defendants' enactment or promulgation of inadequate policies and their failure train and supervise employees to maintain the safety of children in their custody."  (1st Am. Compl. ¶ 220).  Plaintiffs assert that these Defendants are "final policymakers and decisionmakers" for the detention centers who "knew that their policies and practices created conditions that were substantially likely to result in unconstitutional conditions of confinement."  (1st Am. Compl. ¶¶ 221-22).

These Defendants contend that Plaintiffs have failed sufficiently to state facts which support a Section 1983 claim.  (Defs.' 4th Mot. Dismiss 6-7).  Defendants argue that Plaintiffs' allegations fail to "establish a plausible claim that [Defendants] even had knowledge of any of the individual incidents" at the facilities or "specify what policy caused the harm." (Defs.' 4th Mot. Dismiss 7).  Defendants maintain that individual state employees "are entitled to qualified immunity unless their conduct results in the violation of a clearly established constitutional right", and that Plaintiffs cannot maintain a Section 1983 action because they have not demonstrated that Defendants, as supervisors, "implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct . . . ."  (Defs.' 4th Mot. Dismiss 5 (citing *Crawford v. Tilley*, 15 F.4th 752, 760 (6th Cir. 2021)) (quoting *Phillips v. Roane Cnty.*, 534 F.3d 531, 543 (6th Cir. 2008))).

Plaintiffs respond that "granting qualified immunity at the motion to dismiss stage is usually disfavored." (Pls.' Resp. Defs.' 3d, 4th, & 5th Mots. Dismiss 8 (quoting *Marvaso v. Sanchez*, 971 F.3d 599, 605-06 (6th Cir. 2020))). The Sixth Circuit has clarified that "[this] general statement is at best imprecise" and "the validity of [a qualified immunity] defense[] may be apparent from the face of the complaint, rendering a motion to dismiss appropriate." *Crawford* 15 F.4th at 763 (citation omitted).

In *Iqbal*, the Supreme Court expressly stated that "each Government official, his or her title notwithstanding, is only liable for his or her own misconduct. . . . To overcome qualified immunity, [showing] purpose rather than knowledge is required . . . for an official charged with violations arising from his or her superintendent responsibilities." *Iqbal*, 556 U.S. at 677. Here, Plaintiffs allege that "the conditions [at the facilities] fell below the constitutionally permissible line and . . . the Defendants were 'subjectively aware of the risk' those conditions imposed and failed to act reasonably to abate that risk." (Pls.' Resp. Defs.' 3d, 4th, & 5th Mots. Dismiss 13). Relying on *Crawford*, Defendants counter that merely alleging a defendant is aware that "deficient policies and customs posed risks" to plaintiffs but "never tried to alleviate these risks" is insufficient to maintain a Section 1983 cause of action. (Defs.' 4th Mot. Dismiss 7 (citing *Crawford*, 15 F.4th at 766)).

*Crawford* requires a plaintiff to demonstrate three elements to overcome a qualified immunity defense: (1) a "sufficiently serious" constitutional deprivation, (2) "active involvement by the supervisor[,]" and (3) causation. *Crawford*, 15 F.4th at 761. Plaintiffs' allegations primarily address the first element: being subjected to long-term isolation and placed in unsanitary conditions which may constitute sufficiently serious deprivations of their constitutional rights. (*See* 1st Am. Compl. ¶¶ 131-71). These allegations, however, fail to meet the second required

element of active involvement on behalf of most of the Defendants.  Instead, Plaintiffs contend that due to audits of DJJ's facilities occurring in 2017 and 2023, "[i]t is not just plausible that the Defendants were aware of these [conditions]—it seems impossible that they were not." (Pls.' Resp. Defs.' 3d, 4th, & 5th Mots. Dismiss 14).  Plaintiffs seemingly admit that their complaint does not contain specific facts related to individual liability, stating that "[t]he extent of each Defendant's individual and institutional involvement will be fleshed out through discovery." (Pls.' Resp. Defs.' 3d, 4th, & 5th Mots. Dismiss 4).  In *Iqbal*, the Supreme Court squarely rejected the notion that a "supervisor's mere knowledge of his subordinate's discriminatory purpose amounts to the supervisor's violating the Constitution" and held that a plaintiff must plausibly allege the supervisor acted with purpose in contributing to a subordinate's constitutional violation to maintain a Section 1983 claim.  *Iqbal*, 556 U.S. 677.  With the exception of Burton, Plaintiffs have not pleaded sufficient facts alleging that the Individual Defendants acted with this purpose.  As the Sixth Circuit has noted, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Crawford*, 15 F.4th at 762 (citation omitted).

The First Amended Complaint contains few specific allegations related to the Individual Defendants' active involvement in the alleged harm.  (*See* 1st Am. Compl.)  Broadly, Plaintiffs contend that each Defendant was "responsible for the conditions of confinement in youth detention facilities." (1st Am. Compl. ¶¶ 41, 43, 47, 49-52).  Plaintiffs claim that Reed, Scott, Sweatt, and Kazee were "made aware of reported the abuse and neglect occurring at [the] Adair [Center]" but failed to further investigate.  (1st Am. Compl. ¶¶ 95-98).  Plaintiffs also allege that Reed and Kazee "received reports that a staff member was taking girls to unmonitored locations and sexually abusing them." (1st Am. Compl. ¶ 110).  Plaintiffs further allege that "Burton, Rakes, Milburn,

13

Caskey, and/or others excluded them from participating in and denied them the benefits of Defendants' educational and rehabilitative programs, service, and activities." (1st Am. Compl. ¶ 245). None of these generalized factual allegations amount to plausible claims particular Defendants "violated a statutory or constitutional right . . . ." *Marvaso*, 971 F.3d at 605 (citation omitted). Plaintiffs have failed to allege sufficient facts that these Defendants acted with purpose, instead of having mere knowledge of the alleged violations. *Iqbal*, 556 U.S. at 677.

The only Defendant which Plaintiffs have sufficiently pleaded acted with purpose in causing their harm is T. Burton.[5] Plaintiffs contend that T. Burton "regularly falsified incident reports to conceal the suffering inflicted on children in Adair[,]" "restricted children's access to medical providers[,]" and "lied to medical staff about the conditions of children in the facility." (1st Am. Compl. ¶¶ 90-92). Plaintiffs also allege that T. Burton, acting directly, removed Kennedy's clothing for extended periods of time and restricted her "shower access for approximately twelve days." (1st Am. Compl. ¶ 143). Unlike the allegations regarding the other Defendants, these facts do plausibly state "active involvement by the supervisor . . . ." *Crawford*, 15 F.4th at 761. Additionally, these allegations sufficiently allege that Burton acted with "purpose rather than [mere] knowledge . . . ." *Iqbal*, 556 U.S. at 677. Therefore, Burton's affirmative defense of qualified immunity fails for the purpose of the motion to dismiss because Plaintiffs have sufficiently pleaded facts regarding her involvement in their claims.

---

[5] It should be noted that Plaintiffs refer to both Tonya Burton and Dena Burton as "Burton." (1st Am. Compl. ¶¶ 48, 51). Tonya Burton "is the Superintendent of the Adair County Youth Detention Center" while Dena Burton "is Executive Director Office of Operations in the [DJJ]." (1st Am. Compl. ¶¶ 48, 51). Because the factual allegations mentioned in the proceeding sentences directly involve the management of the Adair Center, it is assumed that the allegations refer to Tonya Burton, who has been referred to herein as "Burton."

Plaintiffs also argue that failure to train can result in Section 1983 liability. (Pls.' Resp. Defs.' 3d, 4th, & 5th Mots. Dismiss 15). The Supreme Court has held that failure to train "can only yield liability against a municipality where that city's failure to train reflects deliberate indifference to the constitutional rights of its inhabitants." *City of Canton v. Harris*, 489 U.S. 378, 392 (1989). Plaintiffs' allegations fall short of this high standard, which the Supreme Court cautioned should only be applicable under limited circumstances. *Id.* at 379. This standard requires specificity—"the identified deficiency in a city's training program must be closely related to the ultimate injury." *Id.* at 391. It does not suffice merely to allege "that an injury or accident could have been avoided if an officer had had better or more training, sufficient to equip him to avoid the particular injury-causing conduct." *Id*. Because Plaintiffs have not pleaded sufficient facts of a failure to train reflecting a deliberate or conscious choice, their Section 1983 claim cannot survive a motion to dismiss based on this theory.

With the exception of Burton, Plaintiffs' allegations fail to overcome Defendants' affirmative defenses of qualified immunity. Defendants' motion, therefore, is granted in part and denied in part. The motion is granted as it relates to individual liability under Section 1983 for all moving Defendants, except Burton. Plaintiffs' claims against Harvey, Reed, Scott, Kazee, Sweatt, and Rakes, for individual liability under Section 1983 are dismissed. Plaintiffs' claim against Burton for individual liability under Section 1983 survives.

### b. Negligence Claims

Similar to the Section 1983 claim, the moving Defendants seek dismissal of Plaintiffs' tort claim under Kentucky law based upon qualified official immunity. (Defs.' 4th Mot. Dismiss 8). The analysis for qualified official immunity differs from federal qualified immunity. In Kentucky, "[q]ualified official immunity applies to the negligent performance by a public officer or employee

15

of (1) discretionary acts or functions, i.e., those involving the exercise of discretion and judgment, or personal deliberation, decision, and judgment . . . [;] (2) in good faith; and (3) within the scope of the employee's authority." *Yanero v. Davis*, 65 S.W.3d 510, 522 (Ky. 2001) (internal citation omitted) (citations omitted). Defendants argue that qualified official immunity applies because the acts they performed were discretionary. (Defs.' 4th Mot. Dismiss 8).

Plaintiffs respond that Defendants' alleged actions leading to Plaintiffs' injuries were actually ministerial, not discretionary acts. (Pls.' Resp. Defs.' 3d, 4th, & 5th Mots. Dismiss 19). Under Kentucky law, the "[p]romulgation of rules is a discretionary function[,] [while the] enforcement of those rules is a ministerial function." *Williams v. Ky. Dep't. of Educ.*, 113 S.W.3d 145 (Ky. 2003), *as modified* (Sept. 23, 2003) (citing *Yanero*, 65 S.W.3d at 529); *see also Marson v. Thomason*, 438 S.W.3d 292, 296 (Ky. 2014) ("[A]n act is not necessarily outside the ministerial realm just because the officer performing it has some discretion with respect to the means or method to be employed." (internal quotation marks omitted) (citation omitted)).

Determining qualified official immunity is a difficult endeavor upon a motion to dismiss, as "Kentucky state qualified immunity requires a fact intensive inquiry . . . ." *O'Brien v. Ky. Cabinet for Health & Fam. Servs.*, No. 3:22-CV-00066-GFVT, 2024 WL 841763, at *7 (E.D. Ky. Feb. 28, 2024) (citing *B.L. v. Schuhmann*, 380 F. Supp. 3d 614, 655 (W.D. Ky. 2019)). Accordingly, "courts may struggle to determine its application without the benefit of discovery." *Id.* (citing *Schumann*, 380 F. Supp. 3d at 655). In *Schuhmann*, this Court determined that "[w]hether qualified immunity shields individuals from suit under Kentucky law depends on whether their acts of supervision and training were performed in good or bad faith," which "is a question of fact." *Schuhmann*, 380 F. Supp. 3d at 656. This Court held that "qualified immunity

16

[could not] be determined at this [12(b)(6)] stage of the proceedings," and denied the motion to dismiss on the basis of qualified official immunity. *Id.*

In this instance, Plaintiffs have sufficiently pleaded that "Defendants breached ministerial duties" by failing to comport with DJJ's statutory obligations in operating the facilities. (*See* 1st Am. Compl. ¶¶ 61-62 (citing KRS 15A.065)). Plaintiffs also point to Kentucky Supreme Court precedent in arguing that "specific statutorily imposed obligations are necessarily ministerial." (Pls.' Resp. Defs.' 3d, 4th, & 5th Mots. Dismiss 20 (citing *Storm v. Martin*, 540 S.W.3d 795, 798 (Ky. 2017))). This is all required of Plaintiffs at this time. *See Schuhmann*, 380 F. Supp. 3d at 656 (finding "qualified immunity [did] not apply at this stage of the case[,]" as a plaintiff must only "allege[] facts that state a claim to relief that is plausible on its face and that, if accepted as true, are sufficient to raise a right to relief above the speculative level." (second alteration in original) (internal quotation marks omitted) (quoting *Wesley v. Campbell*, 779 F.3d 421, 427 (6th Cir. 2015))).

For these reasons, Defendants' motion to dismiss is denied as to Plaintiffs' individual liability claims based on negligence.

### 3. *Defendant's Motion to Dismiss* (DN 31)

CHFS moves to dismiss all claims against it. (Defs.' 5th Mot. Dismiss, DN 31). In Plaintiffs' response, they explicitly concede and do not contest Defendants' motion regarding the Section 1983 claim and all state law claims directly against CHFS. (Pls.' Resp. Defs.' 3d, 4th, & 5th Mot. Dismiss 9). Therefore, CHFS's motion is granted regarding these claims.

CHFS moves to dismiss the remaining claims under the ADA and Rehabilitation Act, because Plaintiffs have failed to "to distinguish which allegations are attributable to CHFS versus the other named Defendants." (Defs.' 5th Mot. Dismiss 7). CHFS correctly points out that to

17

survive a motion to dismiss, a complaint must "allege, with particularity, facts that demonstrate what *each* defendant did to violate the asserted constitutional right." *Marcilis v. Twp. of Redford*, 693 F.3d 589, 596-97 (6th Cir. 2012) (citation omitted). Furthermore, a well-pleaded complaint must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Here, Plaintiffs only mention of CHFS is that it is a "public entit[y] receiving federal funds" that is "charged with the care, custody, and supervision of children in Kentucky's foster-care system." (1st Am. Compl. ¶¶ 40, 257). Plaintiffs' sole ostensible allegation against CHFS is that while Neal resided in the Adair Center, "her Cabinet case worker never contacted her." (1st Am. Compl. ¶ 170). This general statement fails to show how Neal's CHFS case worker's failure to act violates the ADA or the Rehabilitation Act. Thus, Plaintiffs have failed to allege sufficient facts tying the conduct of CHFS to their alleged injuries, and CHFS's motion to dismiss the remaining claims against it is granted.

## IV. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** as follows:

1. Plaintiffs' Motion for Leave (DN 34) is **GRANTED**.

2. Defendants' Motion to Strike (DN 27) is **GRANTED IN PART** and **DENIED IN PART**. Plaintiffs are permitted to add Jackson, White, Milburn, Boyd, Burgher, and D. Burton as Defendants as a matter of course, but not Brown, D.B., and C.C. as Plaintiffs. Brown, D.B., and C.C.'s claims are **DISMISSED WITHOUT PREJUDICE**.

3. Defendants' First and Second Motions to Dismiss (DN 22, DN 23) are **DENIED AS MOOT**.

4. Defendants' Third Motion to Dismiss (DN 28) is **GRANTED**. All claims against the moving Defendants in their official capacities are **DISMISSED**.

5.      Defendants' Fourth Motion to Dismiss (DN 29) is **GRANTED IN PART** and **DENIED IN PART**.  The ADA and Rehabilitation Act claims against the moving Defendants in their individual capacities are **DISMISSED**.  The Section 1983 claim against Burton in her individual capacity survives.  The Section 1983 claims against all other moving Defendants in their individual capacities are **DISMISSED**.  The state law negligence claims against all moving Defendants survive.

6.      Defendants' Fifth Motion to Dismiss (DN 31) is **GRANTED**.  All claims against CHFS are **DISMISSED**.

Greg N. Stivers, Chief Judge
United States District Court

January 23, 2025

cc:     counsel of record